# BENJAMIN S. PRETTYMAN

*v.*

## GEORGE HARTLY.

1. LEASE—*of the right to declare term ended and the rent due.* Where it was provided in a written lease that the tenant should not remove or suffer to be removed any of the grain raised, or sell it, until all the rent was paid, to keep the fences and buildings in repair, to cut all the weeds and briers from the hedges, ditches and fence rows in the summer, etc., and also that if the tenant failed to keep any of the covenants in the lease, the landlord should have the right to take possession and declare the rent due, it was *held*, that the fact of there being twenty-six acres of corn missing, a neglect to cut down the weeds, and for injuries to the fences and buildings, the landlord had a clear right to declare the rent due before the day fixed in the lease.

2. SAME—*exchange of lands.* Where a tenant went into possession of lands under a written lease, and afterwards exchanged a part of the land with another tenant of the landlord and with the consent of the latter, but was to pay a different rent, it was *held,* that the land taken in exchange was subject to the same terms as those of the written lease, except as to the rent to be paid.

APPEAL from the Circuit Court of Mason county; the Hon. LYMAN LACEY, Judge, presiding.

Mr. E. A. WALLACE, for the appellant.

Messrs. DEARBORN & CAMPBELL, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a proceeding under a distress warrant issued by Prettyman against Hartly, for rent alleged to be due under the lease of a farm by the former to the latter. Distraint was made, and steps duly taken under the statute, in the circuit court of Mason county, to have the amount of the rent claimed to be due, ascertained and declared. Upon trial there had, a verdict and judgment were rendered in favor of the defendant, and the plaintiff appealed.

The principal question arising is, whether there was any rent due. The lease was a written one, made September 11, 1872, of the premises, for the year 1873, reserving a rent of fifteen bushels of corn per acre for all the land put into corn, and one-third of all the small grain and hay raised. The question is as to the corn rent; the other, unless the hay, seems to have been paid. The lease contained various covenants on the part of the lessee, and, by express stipulation, the rent was to become due on a violation by him of any covenant in the lease. Among the covenants, were the ones, not to remove any of the grain raised on the premises off from the same, or sell it, and that it should not be so removed by any person, until the rent was paid in full; to keep the fences and buildings in repair during the term; to cut all the weeds and briars from the hedges, ditches and fence rows in the summer

of the year; not to underlet the premises; and to farm the premises in a husband-like manner, and raise the greatest amount of grain and hay thereon that the soil and season would permit.

The only witnesses in the case were the parties themselves. The plaintiff testified that defendant had about forty acres of the land in wheat and oats, one hundred and thirty acres in corn, and that there were six acres of unbroken prairie land.

That in the latter part of October, 1873, he went on the premises and found that Hartly had removed therefrom with his family, and that another person was in possession; that the boards had been cut off and the side of the stable torn out; that the lower board from eighty rods of fence on the premises had been taken off, leaving only two boards remaining, and that the fence was in part broken down by cattle, and the boards taken off were not then to be found on the premises; that from twenty-six acres the corn grown thereon that year had been gathered and destroyed, or taken off the premises; that the weeds and briars had not been cut from the fence, hedges and ditches as stipulated in the lease; that twenty acres of sod land ploughed the fall before had not been cultivated at all, nor had the grass been cut and hay made on the six acres of prairie land.

That plaintiff then demanded possession of the premises from the person in possession, and declared the term ended—as he was entitled to do under the lease if any covenant was violated—and all of the rent to be then due him, and issued the distress warrant on the 29th day of October, 1873; that the rent due was 1950 bushels of corn, worth $838.50.

The defendant testified that on removing from the premises in August, 1873, he left them in charge of his father, who lived with his family on them, and was to take care of and gather the corn for defendant; and further testified in attempted excuse of some of the particulars of alleged violation of the lease testified to by plaintiff. Defendant gives no other account as to the twenty-six acres of missing corn, testified to

by plaintiff, than that he did not know of any corn being taken or gathered from the premises, except a lot of five or six acres for feed that had been fed out on the place; he admits he did not cut the weeds or briers along the fence, because there was only a narrow strip about a foot wide, and the weeds along the ditches were doing no harm, and of the hedges he says nothing ; and that he took the boards from the fence and made a hog lot on the premises, and did not put them back, because Prettyman could get them and put them back if he wanted them ; and as to tearing out a side of the stable and leaving it out of repair, he says nothing. Without adverting to anything else, we think that in these last named particulars there was a plain violation of the provisions of the lease, and that, according to its express terms, the rent had become due.

That there was quite an amount of corn rent due, there can be no question.

A point is made by appellee on account of an exchange of a piece of the land which was made with one Stufflebeam. It appears that the year before, 1872, Stufflebeam had been the tenant of this piece of land, and as Hartly entered upon it in March, 1873, and commenced breaking down the stalks thereon, preparatory to cultivating it, he broke down some of the corn which Stufflebeam had left standing and ungathered, there.

To this, Stufflebeam made objection, but as he had leased the same quantity of like land in the same field adjoining Hartly's house, from Prettyman, for the year 1873, he offered to exchange it with Hartly for the former piece, and so leave his corn unmolested, and, with the consent of Prettyman, this exchange was made; the latter consenting to take one-third of the corn raised on the sod land on the part Hartly took in exchange, for rent, instead of fifteen bushels per acre, as named in the written lease.

We have no doubt, under the evidence, that there was here an exchange of land made with the consent of all the

parties, and that there was a substitution of the piece taken from Stufflebeam in lieu of the one embraced in the lease, which Stufflebeam took ; and that the piece so taken by Hartly. in exchange, was subject to the same terms as those of the written lease. except the variation, above named, as to the corn rent. We can not see that this voluntary exchange of land should in any way affect the rights of the parties.

This not being an action brought upon the written lease, we perceive no difficulty because of the substituted land not being, in terms, embraced in such lease. We see no reason why, in this proceeding by distress for rent due, this substituted land may not be regarded as leased by a verbal lease upon the same terms as those which are mentioned in the written lease.

We are of opinion the verdict was manifestly against the evidence, and that the court below erred in not setting it aside and granting a new trial.

The judgment is reversed and the cause remanded.

*Judgment reversed.*